COMMONWEALTH *vs.* LUIS CINTRON. No. 89-P-444. November 13, 1990.
*Evidence*, Declaration against interest.

Upon presentation of evidence of a handbag snatch committed by two men, a jury found the defendant guilty of unarmed robbery. On appeal, the defendant contends that the trial judge abused his discretion in excluding testimony from two witnesses that they were told by another person that he, not the defendant, was the second participant in the robbery. We affirm the conviction.

The following evidence was before the jury. The robbery occurred between 8:30 and 9:00 on the night of December 10, 1986. The defendant was arrested at 9:48 P.M. He matched a description given by the victim to the police. The arrest took place in the parking lot of the Beachland Motel in West Yarmouth, near the scene of the robbery. The police went to the motel because the victim had reported that the robbers fled down a dirt path leading to the area in which the motel was located. Also, with the help of a police dog, the victim's purse was found on the same path. The victim was brought to the parking lot where she identified the defendant as one of her two assailants.

The defendant presented an alibi defense. He testified that he had been at the home of a friend in Hyannis until 9:30 P.M. and that he walked three or four miles to the Beachland Motel, where he visited first with two friends, Lynette Clay and Robin DaSilva, and then with his brother. He testified that before he was arrested at 9:48 P.M. he had been planning to walk home to Harwich. Although the defendant's testimony about the timing of his activities on the night in question strains credulity, it was corroborated by his friend from Hyannis, his brother, Clay, and DaSilva.

The ruling on the evidence in issue on appeal was made in the following context. Clay was called as a defense witness. She testified that on the night in question she resided with DaSilva at the Beachland Motel. Clay was a friend of the defendant, and he had visited their room at about 9:40 P.M. She was asked whether she knew Noah Bell, and she answered, "Yes." (At one point, the victim had identified Bell as the second assailant in the robbery.) She was asked, over objection, whether she had spoken to anyone concerning the case. Before she answered, the judge called a bench conference. Defense counsel informed the judge that Clay had "overheard an individual [Alex Cook] confessing to this particular incident. [The defendant] was not involved in it. That's a third-party confession." The judge at first expressed reservations on hearsay grounds. After considering *Commonwealth* v. *Drew*, 397 Mass. 65 (1986), however, the judge inquired about Cook's availability and was informed by defense counsel that an investigator had tried unsuccessfully to find Cook. The judge then said, "The

statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness. We certainly don't have that last condition. . . . I'll have to exclude it." Defense counsel asked the judge to "[n]ote [his] exception," the bench conference ended, and Clay was excused. DaSilva was then called as a witness. She testified that on the evening of December 10, 1986, the defendant had come to the room in which she was living at the Beachland Motel. She testified that later on the same night, between 10:00 P.M. and 10:30 P.M., Bell and Cook visited the room for about fifteen minutes. She was asked if they said anything to her and she answered, "Yes." Defense counsel told the judge, "[W]e're going to get into the same kind of issue that I raised before . . . ," and the judge responded: "Right. So, I'll note your objection." Defense counsel made no further offer of proof, argument, or request for voir dire concerning Cook's alleged statement.

On appeal, the defendant contends that testimony relating to Cook's out-of-court statement was admissible as a declaration against penal interest. See *Commonwealth* v. *Carr*, 373 Mass. 617, 623 (1977); *Commonwealth* v. *Drew*, 397 Mass. at 73; *Commonwealth* v. *Galloway*, 404 Mass. 204, 207 (1989); Fed.R.Evid. 804(b)(3) (1987). Of the three tests such a statement must meet to be admissible, only one is in issue: "the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness." *Commonwealth* v. *Drew*, 397 Mass. at 73, quoting from *United States* v. *Thomas*, 571 F.2d 285, 288 (5th Cir. 1978). *Commonwealth* v. *Galloway*, 404 Mass. at 208. There is no requirement that the trial judge be convinced by the corroborating circumstances that the statement is actually true, but only that "there is some reasonable likelihood that the statement could be true." *Commonwealth* v. *Drew*, 397 Mass. at 75-76. The trial "judge should not be stringent" — if the issue of corroboration is close, the statement should be admitted, allowing "the good sense of the jury [to] correct any prejudicial impact." *Commonwealth* v. *Galloway*, 404 Mass. at 208-209, quoting from *Commonwealth* v. *Drew*, 397 Mass. at 75 n.10. "In applying the corroboration requirement, [however,] judges are obliged to exercise a discriminating judgment . . . ." *Commonwealth* v. *Drew*, 397 Mass. at 75, quoting from *Commonwealth* v. *Carr*, 373 Mass. at 624.

The defendant is correct in his contention that we should leave to the jury the issue of the credibility of Clay and DaSilva. *Commonwealth* v. *Galloway*, 404 Mass. at 208. For purposes of this appeal, therefore, we assume that Cook, in the company of Bell, visited Clay and DaSilva in their room at the motel approximately an hour after the robbery and that Cook declared that he had committed the robbery. For indicia of trustworthiness of the statement allegedly made by Cook, we look only to the information provided to the trial judge about the circumstances corroborating that statement.

The offer of proof concerning Clay's expected testimony consisted of nothing more than the assertion that she would testify that Cook had admitted committing the robbery. There were no details as to what was said, and no indication whether the statement referred to this particular robbery, who else was present when the statement was made, what Cook's relationship was to Clay, DaSilva, the defendant, and Bell, what Cook's condition was at the time he made the statement, whether the statement was preceded by questioning or discussion, whether Cook was a reliable person, or whether there were any other relevant circumstances. There was no indication, moreover, that the statement was ever repeated, or that Cook fit the victim's description of the second assailant. At the time the testimony was offered through Clay, the judge's decision to exclude it clearly was proper, as there was nothing in the record, nor in an offer of proof, to corroborate Cook's statement.

DaSilva followed Clay to the witness stand and gave her testimony about the visit from Cook and Bell. Defense counsel stated to the judge that they were "going to get into the same kind of issue [he] raised before." He made no more specific offer of proof about the statement or the attendant circumstances than he had earlier. He did not draw the judge's attention to any corroborating factors or request a voir dire. The only corroborating factors revealed in the record were that Cook, when he made an inculpatory statement, was in the company of Bell, a suspect in the robbery, and that the statement was made close in time and location to the robbery's occurrence. Even assuming defense counsel's remark to the judge, that the same issue was being raised, to be a sufficient offer to prove Cook's inculpatory statement to DaSilva, we do not think the corroborating circumstances set out in the record so clearly indicate the trustworthiness of the statement that failure to allow it in evidence was an abuse of discretion. The judge remained in the dark as to, among other things, what Cook actually said and his physical description, mental condition, and reliability. See *Commonwealth* v. *Drew*, 397 Mass. at 77. Contrast *Commonwealth* v. *Galloway*, 404 Mass. at 209.[1]

*Judgment affirmed.*

*John J. Barter* for the defendant.
*Julia K. Vermynck*, Assistant District Attorney, for the Commonwealth.

---

[1]We have been informed that a motion for a new trial is pending, the trial judge having declined to act on the motion before the appeal is decided. Ordinarily, in the interest of judicial economy, a motion for a new trial filed before an appeal is taken or while an appeal is pending should be decided before the appeal is heard. Either the issues raised on appeal would then be disposed of by action taken on the motion, or any appeal from the denial of the motion for a new trial could be consolidated with the appeal from the conviction. In any event, nothing herein should *prevent* the judge from reexamining the substantial issue raised in this appeal on a fuller record in the course of resolving the motion for a new trial.